

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BERNARD SERED, on behalf of himself )
and all others similarly situated,  )
                                    )
          Plaintiff,                )
                                    )
    v.                              )   No. 05 C 857
                                    )   Paul E. Plunkett, Senior Judge
BRISTOL-MYERS SQUIBB                )
COMPANY, a Delaware Corporation,    )
CHARLES C. HEIMBOLD, PETER R.       )
DOLAN, MICHAEL F. MEE,              )
FREDERICK F. SCHIFF, HARRISON       )
M. BAINS, JR., CURTIS L. TOMLIN,    )
RICHARD J. LANE, and PETER          )
RINGROSE                            )
                                    )
          Defendants.               )

## MEMORANDUM OPINION AND ORDER

Bernard Sered ("Plaintiff") filed a class action complaint in state court, accusing Bristol-Myers Squibb Company ("BMS") and the other named defendants (collectively, "Defendants") of fraudulent behavior that allegedly duped Sered and other BMS shareholders into holding onto their BMS stock as the value of the stock plummeted. All of Sered's claims are based on state law. BMS removed the case to federal court on the grounds that the action is preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§77p(b) and 78bb(f)(1). Sered now moves to remand the case back to the state court, arguing that the act does not preempt claims made on behalf of those who have not purchased or sold securities. Because a recent Seventh Circuit decision found that such claims can be preempted, Plaintiff's motion to remand is denied and the

case is dismissed.

## Background

According to Plaintiff's complaint, BMS artificially inflated its earnings using improper accounting practices from July 1, 1999 to March 10, 2003, because it feared a decline in sales of its current product offerings and did not have sufficient new products on the horizon that might help boost sales. (Compl. ¶¶ 6, 7.) The company's 1998 and 1999 annual reports assured shareholders that all was well, that extremely ambitious sales goals would soon be met and possibly exceeded. (*Id.* ¶¶ 37(c), 38.) By February 2001, when the 2000 annual report was issued, shareholders received the news that BMS had exceeded its earnings and earnings-per-share growth targets and had nearly doubled its 1993 sales. (*Id.* ¶ 39.) In reality, according to Plaintiff, BMS's alleged accounting irregularities were all that was propping up this healthy image of the company. (*Id.* ¶ 40.)

On September 19, 2001, BMS entered into a partnership with ImClone to develop and promote Erbitux, a new potential "blockbuster" cancer drug, though it had reason to believe the drug would not receive approval from the Food and Drug Administration ("FDA"). (*Id.* ¶¶ 8, 138, 140, 155.) Nonetheless, BMS allegedly issued misleading statements touting the efficacy of Erbitux. (*Id.* ¶¶ 139, 141, 147.) On December 28, 2001, the FDA issued a right-to-refuse letter to ImClone, signaling a lack of sufficient necessary information for approval of the drug. (*Id.* ¶ 143, 148.) The value of BMS stock dropped from $51.80 to $51.00 by December 31, 2001. (*Id.* ¶ 148.)

Plaintiff alleges that BMS's actions led many of its stockholders to retain their shares, believing the value of the stock to be far higher than it actually was. Between October 19, 1999 and March 10, 2003, the price of BMS stock traded as high as $77.94 per share. (*Id.* ¶ 11.) When all of BMS's allegedly fraudulent behavior finally came to light in March 2003, however, the stock was

trading at $22.51 per share. (*Id.*)

Plaintiff filed his complaint in October 2004, alleging common law fraud and breach of fiduciary duty, seeking damages on behalf of himself and the thousands of stockholders or investors who:

> acquired Bristol-Meyers common stock prior to October 19, 1999 and held at least some of that stock to and including March 10, 2003, and who suffered damages as a result of defendants' misrepresentations. Excluded from the Class are: (i) the defendants; (ii) members of the immediate family of each of the Individual Defendants; (iii) any entity in which any defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of Bristol-Myers; (v) any person who was an officer or director of Bristol-Myers or any of its subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any of the excluded persons or entities specified in this paragraph.

(*Id.* ¶ 28, 29.)

Plaintiff requests damages measured by loss of each shareholder's principal, in addition to the opportunity each lost to earn a return on an alternative investment. (*Id.* ¶ 211.)

## Discussion

The Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 *et seq.* ("PSLRA"), was enacted in 1995 "to curb abuses in private class action securities litigation," namely those brought under §10(b) of the Securities Exchange Act of 1934 and 17 CFR § 240.10b-5 ("Rule 10b-5"). *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1340 (11th Cir. 2002); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005). To avoid the PSLRA's stringent filing requirements, plaintiffs brought private securities class actions based on state law and filing them in state rather than federal court. *Id.* Congress enacted SLUSA in 1998 to stem the resulting tide of state court securities class action lawsuits by making "federal court the exclusive venue for

class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d. Cir. 2001). SLUSA provides, in part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §77p(b).

Neither Plaintiff nor Defendants dispute that this lawsuit is a "covered class action," that the claims are based on state law, that Plaintiff alleges that BMS made untrue statements and omissions of material facts, and that BMS stock is a "covered security." Where the parties differ is in their interpretations of SLUSA's "in connection with" requirement as it applies to Plaintiff's complaint. Plaintiff argues that his complaint is not removable and is not preempted by SLUSA because it "does not assert claims related to the purchase or sale of securities." (Compl. ¶ 14.) Instead, his claim is made on behalf of "all persons or entities who acquired Bristol-Myers common stock prior to October 19, 1999, and held at least some of that stock to and including March 10, 2003, and who suffered damages as a result of defendants' misrepresentations." Plaintiff asks us to read his complaint as a "holders" claim, excluding damages for investors who bought or sold BMS stock in connection with BMS's alleged fraud.

Several courts confronted with the issue of whether SLUSA preempts holders claims have determined that it does not because such claims are not made "in connection with" the purchase or

sale of covered securities. *E.g., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 44 (2d Cir. 2005). These decisions are based largely on interpretations of similar language in § 10(b) and Rule 10b-5 and the Supreme Court decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). The *Blue Chip* Court determined that there is no private right of action for nonpurchasers and nonsellers under Rule 10b-5. *Id.* at 749 (noting that a private causes of action under 10b-5 "has been judicially found to exist, and . . . will have to be judicially delimited."). *Blue Chip* was interpreted to allow such actions to proceed under applicable state law. *Gordon v. Buntrok*, No. 00-C303, 2000 WL 556763, at *4 (N.D. Ill. Apr. 28, 2000). Reasoning that Congress was aware of the *Blue Chip* rule when it enacted SLUSA, a handful of courts found that Congress did not intend to make holders claims removable to federal court. *Dabit*, 395 F.3d at 44 ("[W]e see no clear indication either in the text or the legislative history of SLUSA of a congressional intent to abolish nonpurchaser and nonseller state class claims."); *Riley*, 292 F.3d at 1345; *Green v. Ameritrade, Inc.*, 279 F.3d 590, 598 (8th Cir. 2002).

Under this line of cases, a lead plaintiff seeking refuge from SLUSA's preemptive powers must be careful not to sweep actual sales or purchases of covered securities within the ambit of his or her claim. *Dabit*, 395 F.3d at 46–47 ("Where . . . the complaint does not include sufficient information to permit the court to identify and separate preempted and non-preempted subclasses, . . . the proper approach will ordinarily be to dismiss the entire claim pursuant to SLUSA."); *Riley*, 292 F.3d at 1345; *see also Kircher v. Putnam Funds Trust*, 403 F.3d 478, 482 (7th Cir. 2005). The Second Circuit goes so far as to suggest that a plaintiff asserting a holders claim be required to expressly exclude purchasers and sellers from the class claimants. *Dabit*, 395 F.3d at 46.

Here, Plaintiff's class definition makes no such express exclusion. In fact, Plaintiff lists six

different categories of excluded claimants but fails to exclude purchasers or sellers of BMS stock. More damaging to Plaintiff's cause, however, is that his class definition can be read to include both purchasers and sellers.

Surely some members of the potential class bought BMS stock before October 19, 1999 and then, believing in the rosy financial picture painted by BMS, decided to purchase additional shares after that date. After all, it is difficult to imagine that none of the thousands of investors duped by BMS's alleged fraud into retaining their stock were persuaded to buy more. Such persons or entities may well have "suffered damages as a result of defendants' misrepresentations." As long as they held on to some of their shares along the way, they are not excluded from the class. On this basis alone Plaintiff's claims are preempted.

Furthermore, Plaintiff's class is defined to include investors who "held at least some" of their stock. This implies these investors could have sold some of their stock during the class period, though it is doubtful that those who sold while the stock's prices were inflated would have much cause to complain. However, if faulty drafting were the only problem with Plaintiff's complaint, the proper course might be to simply dismiss it without prejudice and allow him to re-file his complaint with a more tightly defined class. *Dabit*, 395 F.3d at 47 ("Ordinarily such dismissal should be without prejudice in order to allow the plaintiff to plead a claim sounding only in state law if possible."). Instead, an insurmountable hurdle looms. The Seventh Circuit weighed in on the scope of SLUSA preemption after Plaintiff filed his claim and after he requested the case be remanded back to state court. That decision is the death knell of Plaintiff's claim here.

In *Kircher v. Putnam Funds Trust*, one of the complaints at issue actually successfully pled a holders-only claim by defining its class as "all investors who held the fund's securities during a

defined period *and* neither purchased or sold shares during that period." *Id.* at 483. The court acknowledges that *Blue Chip* prevents this claim from proceeding under Rule 10b-5, but finds that the claim is nonetheless preempted by SLUSA, noting,

> It would be more than a little strange if the Supreme Court's decision to block private litigation by non-traders became the opening by which that very litigation could be pursued under state law, despite the judgment of Congress (reflected in SLUSA) that securities class actions must proceed under federal securities law or not at all.

*Id.* at 483–84.

The Seventh Circuit agrees with other circuits that SLUSA's "in connection with" language is taken from §10(b) and Rule 10b-5, but diverges in finding that the "language ensures that the fraud occurs in securities transactions rather than some other activity." *Id.* at 483 (citing *SEC v. Zanford*, 535 U.S. 813, 821–22 (2002); *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971)). Thus, while those other courts have found that only fraud tied directly to a sale or purchase of securities is preempted by SLUSA, the Seventh Circuit finds that "limitations on private rights of action to enforce §10(b) and Rule 10b-5 do not open the door to litigation about securities transactions under state law." *Id.* at 484. When our circuit has closed the door to such claims, it is not for a district court to open it even slightly.

The decision does not, as Plaintiff asserts, mean that claims like those brought here cannot be heard. Rather, the court finds that SLUSA prevents the *private* actions of non-purchasers and non-sellers, but that public enforcement of such claims is not precluded. *Id.* ("By depicting their classes as containing entirely non-traders, plaintiffs do not take their claims outside §10(b) and Rule 10b-5; instead they demonstrate only that the claims must be left to public enforcement.") And, indeed, the Plaintiff's claims could have been brought by the Securities and Exchange Commission

("SEC"). As evidence of this fact, Defendants point to an SEC filing in August 2004, raising many of the claims contained in Plaintiff's complaint. *SEC v. Bristol-Myers Squibb Co.*, No. 04-3680 (D.N.J. filed August 4, 2004).[1]

The *Kircher* court also found that the claims at issue could have been brought in federal court under Rule 10b-5 had the class been re-defined. The court denounces the attempts of the plaintiffs in that case "to define non-purchaser-non-seller classes [in an effort to] evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an idiosyncratic award[,] . . . . the very sort of maneuver that SLUSA is designed to prevent." *Id.* at 484. Assuming Plaintiff met PSLRA's other filing requirements, Plaintiff could have brought his claims under Rule 10b-5 by not restricting the class to non-purchasers and non-sellers, as the plaintiffs in the consolidated class action *In re Bristol-Myers Squibb Securities Litigation* did. *Id.* 312 F. Supp. 2d 549 (S.D.N.Y. 2004). That case, involving remarkably similar claims, was dismissed on grounds different from the issue raised here but negotiations conducted during the appeals process resulted in a $300,000,000 settlement. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 232 (S.D.N.Y. 2005).

Based on the ruling in *Kircher*, we find that Plaintiff's claim is preempted by SLUSA. Plaintiff's motion to remand is therefore denied and the case is dismissed. *See Kircher v. Putnam Funds Trust*, 373 F.3d 847, 848 (7th Cir. 2004) (citing 15 U.S.C. §§ 77p(b), (d)(4), 78bb(f)(1), (3)(D)).

---

[1] The matter settled on the same day it was filed, but apparently the applicability of §10(b) and Rule 10b-5 was never at issue. (Def.'s Opp'n Pl.'s Mot. Remand at 8 n.5.)

## Conclusion

For all of the reasons stated above, Plaintiff's motion for remand is denied. The case is dismissed with prejudice.

**ENTER:**

*[signature]*

**UNITED STATES DISTRICT JUDGE**

**DATED:** JUL 1 2005